UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOSEPH TAUBMAN,<br><br>            Petitioner,<br><br>     v.<br><br>HEDGPETH, Warden,<br><br>            Respondent. | Case No. CV 12-8233-DOC (LAL)<br><br>**FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Final Report and Recommendation is submitted to the Honorable David O. Carter, United States District Judge, under the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## I.

## PROCEEDINGS

On September 24, 2012, Joseph Taubman ("Petitioner") filed a Petition for Writ of Habeas Corpus by a Person in States Custody pursuant to 28 U.S.C. § 2254 ("Petition"). On October 8, 2013, Respondent filed an Answer to the Petition. On July 25, 2014, Petitioner filed a Reply. Thus, this matter is ready for decision.[1]

---

[1] On April 8, 2015, this Court filed its original Report and Recommendation. On May 26, 2015, Petitioner filed Objections to the Report and Recommendation. This Court files this Final Report and Recommendation to respond to Petitioner's Objections where necessary.

## II.

## **PROCEDURAL HISTORY**

On September 21, 2010, Petitioner pleaded guilty in the Los Angeles County Superior Court to one count of first degree burglary,[2] one count of second degree robbery,[3] and one count of assault with a deadly weapon.[4] Petitioner also admitted that he had suffered a number of prior serious or violent felonies. (Volume 2 Clerk's Transcript ("CT") at 219-21, 291-92; Lodgment 1; Lodgment 16 at 5-17.) On November 30, 2010, the trial court sentenced Petitioner to a state prison term of 21 years. (2 CT at 291-92; Lodgment 1; Lodgment 16 at 30-31.)

Petitioner appealed his conviction to the California Court of Appeal. (Lodgments 13-15.) On April 25, 2012, the California Court of Appeal affirmed the judgment. (Lodgment 2.)

On May 29, 2012, Petitioner filed a Petition for Review in the California Supreme Court. (Lodgment 3.) On July 18, 2012, the California Supreme Court denied review. (Lodgment 4.)

Meanwhile, on January 26, 2012, Petitioner filed a habeas corpus petition in the California Court of Appeal. (Lodgment 9.) On April 25, 2012, the California Court of Appeal summarily denied habeas relief. (Lodgment 10.)

On May 18, 2012, Petitioner filed a habeas corpus petition in the California Supreme Court. (Lodgment 11.) On August 8, 2012, the California Supreme Court summarily denied habeas relief. (Lodgment 12.)

Finally, on February 25, 2013, Petitioner filed a second habeas corpus petition in the California Supreme Court. (Lodgment 19.) The supreme court denied relief with citations to In re Robbins[5] and In re Clark.[6]

///

///

## III.

---

[2] Cal. Penal Code § 459.
[3] Cal. Penal Code § 211.
[4] Cal. Penal Code § 245(a)(1).
[5] 18 Cal.4th 770, 780 (1998).
[6] 5 Cal.4th 750, 767-769 (1993).

# FACTUAL BACKGROUND

Because Petitioner is not challenging the sufficiency of the evidence, this Court adopts the factual discussion of the California Court of Appeal opinion as a fair and accurate summary of the evidence presented at trial:[7]

> When Anthony Mack came home from work at around 4:30 p.m. on June 5, 2009, he saw that the kitchen window screen had been removed, but the window was closed. He entered his house, where he saw defendant Joseph Taubman heading toward the back door. Taubman was carrying various items that belonged to residents of the home, and had a canvas bag with a black strap that was slung over his shoulder. Mack moved to intercept Taubman and yelled at him to stop. Mack grabbed hold of the bag's shoulder strap, but was unable to hold onto it. Taubman said, "don't try to stop me or I'll cut you." Taubman then turned around and stabbed Mack in the chest with what was most likely a screwdriver.
>
> Taubman ran out the door with Mack in pursuit. Mack's wife drove up at that moment, and although Mack never got a good look at Taubman, she did, and was able to identify Taubman from a "six pack" photographic line-up. Mack and several neighbors chased Taubman, but he got away. The police eventually found Taubman in Las Vegas. Inside Taubman's car were eight screwdrivers and a black bag for a laptop computer.
>
> Taubman was charged with burglary, robbery, and assault with a deadly weapon. Due to his extensive criminal record, numerous sentence enhancement allegations were included in the information. Relevant here are seven that were alleged for purposes of the one-year enhancement supplied by Penal Code section 667.5, subdivision (b) for each separate prison term served so long as it was

---

[7] "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2254(e)(1)). Thus, Ninth Circuit cases have presumed correct the factual summary set forth in an opinion of the California Court of Appeal under 28 U.S.C. §2254(e)(1). See, e.g., Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009) (citations omitted); Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

imposed within five years of having completed an earlier prison term.

In addition, to the testimony of Mack and his wife, Taubman's friend and drug-use companion Alicia Witkowski testified that she was with Taubman right before the break-in at the Mack home, and that Taubman said he was going to commit a burglary to pay for drugs. According to Witkowski, Taubman returned some time later, stating that he had been inside someone's home when that person returned, they had struggled, and he had accidentally stabbed him with a screwdriver.

. . .

The next day, Taubman [, who was representing himself at trial,] said he wanted to enter an open plea. The prosecutor reminded Taubman of the charges and allegations against him, and asked if he needed more time to talk to a lawyer about the case. Taubman answer no. The prosecutor said Taubman should ask either her or his newly-appointed stand-by counsel for an explanation if he did not understand something during the plea proceedings, and Taubman said he understood. He was then advised of, and acknowledged, that he was giving up all of his various trial-related rights. However, he was not expressly advised at that time that he had a right to counsel when entering his plea. As part of the plea proceedings, Taubman agreed to admit to all the prior conviction allegations.

(Lodgment 2 at 2-4 (footnotes omitted).

## IV.
## **PETITIONER'S CLAIM**

Petitioner raises five claims for relief:

(1) The trial court erred in allowing the prosecution to proceed while Petitioner's pretrial appeal was pending (Petition at 5, 5A);

(2) The trial court erred by failing to obtain Petitioner's waiver of counsel before his change of plea (Petition at 5);

(3) Petitioner's plea was coerced and involuntary and the trial court erred by denying

Petitioner's request to withdraw his plea (Petition at 5-6, 5A-5B);

(4) Petitioner's sentences for robbery and assault violate the Double Jeopardy Clause (Petition at 6);

(5) Petitioner's plea to the prior conviction allegations violated his right to a jury trial under Apprendi v. New Jersey.[8]

## V.
## STANDARD OF REVIEW

**A.   28 U.S.C. § 2254.**

The standard of review that applies to Petitioner's claims is stated in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). If these standards are difficult to meet, it is because they were meant to be. As the Supreme Court stated in Harrington v. Richter,[9] while the AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings[,]" habeas relief may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with United States Supreme Court precedent. Further, a state court factual determination must be presumed correct unless rebutted by clear and convincing evidence.[10]

///

---

[8] Respondent argues that Claims Three and Four are defaulted by the California Supreme Court's denial of relief with a citation to Robbins and Clark. (Answer at 8-10.) In the interest of judicial economy, this Court will address Petitioner's claims on the merits rather than perform the procedural default analysis.

[9] 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011).

[10] 28 U.S.C. § 2254(e)(1).

**B.     Sources of "Clearly Established Federal Law."**

According to Williams v. Taylor,[11] the law that controls federal habeas review of state court decisions under the AEDPA consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." To determine what, if any, "clearly established" United States Supreme Court law exists, a federal habeas court also may examine decisions other than those of the United States Supreme Court.[12] Ninth Circuit cases "may be persuasive."[13] A state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, if no Supreme Court decision has provided a clear holding relating to the legal issue the habeas petitioner raised in state court.[14]

Although a particular state court decision may be both "contrary to" and an "unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings under Williams.

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.[15] If a state court decision denying a claim is "contrary to" controlling Supreme Court precedent, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)."[16] However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."[17]

State court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an unreasonable application'

---

[11] 529 U.S. 362, 412, 120 S. Ct. 1495, 146, L. Ed. 2d 389 (2000).
[12] LaJoie v. Thompson, 217 F.3d 663, 669 n.6 (9th Cir. 2000).
[13] Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).
[14] Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004); see also Carey v. Musladin, 549 U.S. 70, 77, 127, S. Ct. 649, 649, 166 L. Ed. 2d 482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law).
[15] Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (citing Williams, 529 U.S. at 405-06).
[16] Williams, 529 U.S. at 406.
[17] Early, 537 U.S. at 8.

of clearly established federal law, or based on 'an <u>unreasonable</u> determination of the facts.'"[18] Accordingly, this Court may reject a state court decision that correctly identified the applicable federal rule but unreasonably applied the rule to the facts of a particular case.[19] However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable" under <u>Woodford v. Visciotti</u>.[20] An "unreasonable application" is different from merely an incorrect one.[21]

Where, as here with Claims One, Two, and Five,[22] the state courts have supplied no reasoned decision for denying the petitioner's claims on the merits,[23] this Court must perform an "'independent review of the record' to ascertain whether the state court decision was objectively unreasonable."[24]

Where, as here with Claims Three and Four, it is clear that the state court rejected a constitutional claim on procedural ground and did not reach its merits, the deferential standard of Section 2254(d) does not apply and a federal habeas court must review the claim de novo.[25]

## VI.

## DISCUSSION

A.   **Pretrial Appeal.**

In Ground One, Petitioner argues that the trial court erred by allowing the prosecution to proceed with the trial while Petitioner's pretrial appeal and habeas corpus proceedings were pending in state and federal court. (Petition at 5, 5A.)

As the United States Supreme Court decided in <u>Tollett v. Henderson</u>, "a guilty plea

---

[18] <u>Id.</u> at 11 (citing 28 U.S.C. § 2254(d)).
[19] <u>See Williams</u>, 529 U.S. at 406-10, 413.
[20] 537 U.S. 19, 27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002).
[21] <u>Williams</u>, 529 U.S. at 409-10.
[22] The California Court of Appeal also addressed Claim Four to the extent it invoked state law only. The state appellate court did not address Petitioner's federal Double Jeopardy claim. (Lodgment 2 at 11-12.)
[23] Petitioner presented Claim One to the Los Angeles County Superior Court on habeas corpus review. (Lodgment 6 at 1-7.) However, the superior court discussed only Petitioner's ineffective assistance of appellate counsel claim in its decision denying habeas relief. (Lodgment 7.)
[24] <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003) (citing <u>Delgado v. Lewis</u>, 223 F.3d 976, 981-82 (9th Cir. 2000)).
[25] <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167-68 (9th Cir. 2002).

represents a break in the chain of events which has preceded it in the criminal process."[26] Accordingly, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."[27]

Courts have found an exception to the Tollett rule for "jurisdictional" claims, which challenge "the very power of the State to bring the defendant into court . . . ."[28] Such claims include challenges evident from the face of the indictment "'that the applicable statute is unconstitutional or that the indictment fails to state an offense.'"[29] Although Petitioner appears to claim that the trial court lacked jurisdiction over his case while his appeal was pending, he has not raised a true jurisdictional claim. He does not claim California Penal Code sections 211, 245, or 459 are unconstitutional or that the charging document failed to state an offense that the State could constitutionally prosecute.

What Petitioner is really raising is a garden variety state procedural challenge, which this Court does not have the power to review on federal habeas corpus.[30] Accordingly, Petitioner's claim regarding state court procedures that occurred before his guilty plea must fail.

**B.     Waiver of Counsel.**

In Claim Two, Petitioner argues that the trial court violated Petitioner's rights to equal protection and to counsel by denying him counsel before Petitioner entered his guilty plea. (Petition at 5.)

**1.   Background.**

Before trial, Petitioner moved the trial court for permission to represent himself. (1 CT at 51-53.) The trial court advised Petitioner of his constitutional rights, after which Petitioner indicated that he understood his rights and "the potential pitfalls of self-representation." (1 CT at

---

[26] See Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 235 (1973).
[27] Id.
[28] Blackledge v. Perry, 417 U.S. 21, 30, 40 L. Ed. 2d 628 (1974).
[29] United States v. Montilla, 870 F.2d 549, 552 (9th Cir. 1989), as amended 907 F.2d 115 (9th Cir. 1990), (quoting United States v. Broncheau, 597 F.2d 1260, 1262 n.1 (9th Cir. 1979).
[30] Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

54.) The trial court granted Petitioner's request to represent himself. (1 CT at 54.)

Petitioner actively litigated pretrial issues. He filed, and responded to, pretrial motions in the trial court and filed pretrial writ petitions in the appellate courts. (1 CT at 58-76, 97-116, 123-46, 150, 159-65, 167-76, 179-85, 194-96, 201-03, 214-16.) At trial, Petitioner ably represented himself and examined witnesses. After Witkowski testified against Petitioner at trial, the court advised Petitioner that Witkowski had greatly damaged his defense. (3 RT at 281.) Petitioner responded that he "already made those observations." (3 RT at 281.)

Apparently based in large part on Witkowski's damaging testimony, Petitioner decided to suspend the trial proceedings and plead guilty. (Lodgment 16.) Before Petitioner entered his guilty plea, the prosecutor explained the charges to Petitioner and Petitioner stated that he understood. (Lodgment 16 at 6.) The prosecutor then asked Petitioner if he "need[ed] any more time to talk to an attorney about the facts of your case"; Petitioner said he did not. (Lodgment 16 at 7.) The prosecutor also advised Petitioner of his jury trial rights, to which he stated he "knowingly, intelligently, and voluntarily" waived those rights. (Lodgment 16 at 7-8.) Petitioner also stated that he understood the prosecutor's explanation of the potential sentence and consequences of his plea. (Lodgment 16 at 8-10.) Finally, Petitioner stated that he was pleading guilty freely and voluntarily, and that nobody made any promises or threats to induce his plea. (Lodgment 16 at 10.) Petitioner then pleaded guilty to the charges and strike allegations. (Lodgment 16 at 10-17.)

### 2. Legal Standard.

The United States Supreme Court explained in Marshall v. Rodgers that "[i]t is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.'"[31] In Lafler v. Cooper, the Supreme Court confirmed that "the 'entry of a guilty plea, whether to a misdemeanor or a felony charge, ranks as a 'critical stage' at which the right to counsel adheres.'"[32]

"It is just as well settled, however, that a defendant also has the right to 'proceed *without*

---

[31] Marshall v. Rodgers, --- U.S. ----, 133 S. Ct. 1446, 1449, 185 L. Ed. 2d 540 (2013) (quoting Iowa v. Tovar, 541 U.S. 77, 80-81, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004)).
[32] Lafler v. Cooper, 132 S. Ct. 1376, 1392 (2012) (quoting Tovar, 541 U.S. at 81.)

counsel when he voluntarily and intelligently elects to do so.'"[33]  The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel."[34]  "The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding."[35]

As the United States Supreme Court has held in Tovar, "in a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel."[36]

### 3. **Analysis.**

Although the court did not explicitly remind Petitioner of his right to be represented by counsel at his plea hearing, given "the particular facts and circumstances surrounding [Petitioner's] case,"[37] it is clear he voluntarily and intelligently proceeded with his plea hearing without counsel.  First, Petitioner had represented himself through the pretrial proceedings and the beginning portion of trial with great sophistication.  Second, although the charges against Petitioner were not simple, he had a thorough grasp of the issues and the elements of the charges. In fact, Petitioner informed the trial court that he realized Witkoswki's testimony had been devastating to his defense and made his decision to plead guilty after this observation.  (3 RT at 281; Lodgment 16.)  Perhaps most significantly, before Petitioner entered his plea, the prosecutor asked if he needed time to consult with an attorney.  Petitioner stated that he did not need to consult an attorney.  (Lodgment 16 at 7.)  Ultimately, as was the case in Tovar, Petitioner "has never claimed that he did not fully understand the charge or the range of punishment for the crime prior to pleading guilty," "articulated with precision the additional information counsel could have provided," or "asserted that he was unaware of his right to be counseled."[38]

---

[33] Marshall, 133 S. Ct. at 1449 (quoting Faretta v. California, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)).
[34] Tovar, 541 U.S. at 88.
[35] Id.
[36] Id. at 92.
[37] See Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).
[38] Id. at 92-93

1    Accordingly, this Court finds that the California courts' denial of Petitioner's waiver of
2 counsel claim was neither contrary to, nor involved an unreasonable application of, clearly
3 established federal law, as determined by the United States Supreme Court. Claim Two does not
4 warrant habeas relief.

**C.     Knowing and Voluntary Plea.**

     **1.     Background.**

In Claim Three, Petitioner argues that his guilty plea was not knowing and voluntary due to his depression combined with the trial court's statements regarding the weakness of Petitioner's defense. (Petition at 5-6, 5A-5B.)

Petitioner's claim relies, in part, on the trial court's comments in the middle of the first day of trial. The trial court cautioned Petitioner as follows:

> Let me just say, I don't know ultimately what the evidence is in this case because we're nowhere near the end . . . but the bottom line is, talking to you as someone who spent 17 years working as defense counsel in this building, similar position as your standby counsel, the only thing I can tell you is I think -- and no one listens to me. Pro pers never listen to me, so it doesn't really matter.
>
> I think you should ask that [standby counsel] represent you, and you should be on your hands and knees begging the People to give you the offer that they had made to you before we started the trial.
>
> I think [prosecution witness Alicia] Witkowski destroyed your case. I think she was honest, I think she was believable, and I think you're in big trouble.
>
> Now, like I said, you can do whatever you want and we'll go forward with the trial. I mean, it's getting interesting now. But the bottom line is you're in big trouble.
>
> . . .
>
> That's what I see. I mean, I haven't seen all the evidence and I'm not the jury, so I guess it doesn't matter. Like I said, No one cares what I think.
>
> . . .

But it's your call, whatever you want to do. I'm just saying, as the person who was sitting by innocently, she was devastating. . . .

(3 RT at 281-82.)

Petitioner acknowledged the trial court's statement and explained, "[t]o be honest with you, your Honor, I've already made those observations. I made those observations around 12:00 when we broke for lunch." (3 RT at 281-82.) Petitioner then requested that the prosecutor ask her supervisor if their original plea offer was still available; the prosecutor agreed to ask. (3 RT at 288.) The trial court then continued with trial for the rest of the afternoon. (3 RT at 289-305.)

First thing the next morning, Petitioner asked if the prosecution was willing to extend a plea offer. (Lodgment 16 at 1.) The trial court informed him that there was no offer, after which Petitioner expressed his desire to plead guilty to all the charges anyway. (Lodgment 16 at 2-5.) Petitioner then continued with his change plea, as detailed above.

At Petitioner's sentencing hearing, Petitioner moved to withdraw his plea. He claimed that at the time of his plea he was suffering from a manic-depressive episode and had not been prescribed medication. (Lodgment 16 at 21, 24.) The trial court denied Petitioner's motion, finding that "[the court] observed the defendant [throughout the proceedings and] there was no problem with his mental state." (Lodgment 16 at 24.)

### 2. **Legal Standard.**

In Bradshaw v. Stumpf, the United States Supreme Court explained that "[a] guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences."[39] "[A] 'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless *induced* by threats . . ., misrepresentation . . ., or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business.'"[40]

---

[39] Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S. Ct. 2398, 162 L. Ed. 2d 143 (2005) (internal quotation marks and citation omitted).

[40] Bousley v. United States, 523 U.S. 614, 619, 118 S. Ct. 1604 (1998) (emphasis added) (quoting Brady, 397 at 755).

"[A] defendant is not competent to plead guilty if a mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature and consequences of his plea."[41]

"A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing."[42] "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternatives courses open to the defendant.'"[43] The voluntariness of a defendant's guilty plea "can be determined only by considering all of the relevant circumstances surrounding it."[44]

### 3. **Analysis.**

On this record, Petitioner has failed to carry his burden of establishing that his guilty plea was not knowing and voluntary. Nothing about the circumstances of Petitioner's plea, the trial court's comments, or Petitioner's mental health supports Petitioner's claim that his plea was not knowing and voluntary. First, Petitioner was clearly engaged in the plea proceedings, and made a conscious and thoughtful decision to plead guilty after considering the strength of the evidence the prosecution had presented against him at that point in the trial.

Second, Petitioner has not shown that his plea was induced by threats, promises, or misrepresentations by the trial court. The trial court did recognize the strength of the evidence against Petitioner and recommended that Petitioner ask that counsel be appointed for purposes of asking the prosecution to reconsider a plea offer. However, Petitioner stated that he had come to the same conclusions about the evidence and then asked the prosecutor to ask her supervisor if they were willing to extend a plea offer again. Given Petitioner's statements, it is clear that he was not influenced by the trial court's statements, but rather had come to the same conclusions independently. Petitioner's rejection of the trial court's recommendation that he accept the appointment of counsel instead of representing himself shows that the he was not influenced by

---

[41] de Kaplany v. Enomoto, 540 F.2d 975, 986 (9th Cir. 1976).
[42] Little v. Crawford, 449 F.3d 1075, 1080 (9th Cir. 2006) (citing Parke v. Raley, 506 U.S. 20, 31-34, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992)).
[43] Hill v. Lockhard, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)).
[44] Brady United States, 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).

1 the trial court's statements.

2 Finally, Petitioner offers no evidence, other than his own self-serving statements, that he
3 suffered from a mental impairment at the time of his guilty plea such that he was unable to enter
4 a knowing, voluntary, and intelligent guilty plea. In fact, the record disproves his claim. He was
5 coherent and responsive at the plea hearing, and did not complain of any depression. Moreover,
6 the trial court explained that it had observed Petitioner throughout the proceedings and that
7 "[t]here was no problem with his mental state." (Lodgment 16 at 24.)

8 Accordingly, this Court finds that the California courts' denial of Petitioner's
9 voluntariness claim was neither contrary to, nor involved an unreasonable application of, clearly
10 established federal law, as determined by the United States Supreme Court. Habeas relief is not
11 supported by Claim Three.

12 **D.      Double Jeopardy.**

13 In Claim Four, Petitioner contends that his consecutive sentences for robbery and assault
14 based on the same incident violate the Due Process Clause. (Petition at 6.)

15 Petitioner pleaded guilty to one count of burglary, one count of robbery, and one count of
16 assault with a deadly weapon stemming from the single event at Anthony Mack's home.
17 (Lodgment 16 at 10-11, 28.) The trial court sentenced Petitioner to 12 years in state prison for
18 the burglary conviction and a consecutive sentence of two years in state prison for the assault
19 conviction. In light of Petitioner's sentence for the burglary conviction, the court stayed the
20 sentence for the robbery conviction pursuant to California Penal Code section 654, which states
21 that an act "that is punishable in different ways by different provisions of law" must be punished
22 only "under the provision that provides for the longest potential term."[45]

23 The Double Jeopardy Clause provides that no person shall "be subject for the same
24 offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The United States
25 Supreme Court has held that the Double Jeopardy Clause protects against successive
26 prosecutions for the same offense after acquittal or conviction, and against multiple punishments

---

[45] Cal. Penal Code § 654(a).

-14-

for the same offense.[46] The rule against multiple punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature."[47] Whether punishments imposed from a single proceeding are "multiple" for purposes of double jeopardy is essentially an issue of legislative intent.[48] "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[49]

Burglary and assault with a deadly weapon are totally different crimes under California law. Naturally, applying the Blockburger test, assault with a deadly weapon and burglary are distinct and separate offenses under California law. Burglary requires proof of an element that assault does not – entry into a dwelling with the intent to commit a felony.[50] On the other hand, assault with a deadly weapon requires proof of an element that burglary does not – an assault on the person of another.[51] Accordingly, even if Petitioner committed these crimes with the same objective – to complete the burglary of Mack's home – they do not constitute the same offense and, thus, punishment for both offenses does not violate the Double Jeopardy Clause.

Accordingly, this Court finds that the California courts' denial of Petitioner's Double Jeopardy claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Claim Four does not support habeas relief.

**E.   Apprendi.**

Finally, in Claim Five,[52] Petitioner argues that his sentencing enhancements under California Penal Code section 667.5(b) for having suffered prior prison sentences violated his

---

[46] Monge v. California, 524 U.S. 721, 727-28, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998).
[47] Ohio v. Johnson, 467 U.S. 493, 499, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984).
[48] See Missouri v. Hunter, 459 U.S. 359, 366-68, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983).
[49] Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).
[50] Cal. Penal Code § 459.
[51] Cal. Penal Code § 245(a).
[52] In his Objections, Petitioner highlights the fact that he stated in his Traverse his desire to withdraw Claim Five. (Objections at 13-14.) This Court recognizes Petitioner's desire to withdraw Claim Five. However, because the claim is easily denied on the merits, this Court addresses the claim for the sake of completeness.

1  right to a jury trial under Apprendi v. New Jersey.[53]  Specifically, Petitioner argues that,
2  although he admitted having suffered the prior prison sentences, he did not expressly admit, and
3  a jury did not find, the facts that he had served separate terms in prison and had not remained
4  free of prison or the commission of a felony offense for a five year period, as California Penal
5  Code section 667.5 requires.  (Petition at 6; see also Lodgment 3 at 28-30.)

6  　　　In addition to pleading guilty to the substantive charges against him, Petitioner admitted
7  having sustained multiple prior convictions within the meaning of California Penal Code section
8  667.5(b). (Lodgment 16 at 12-13.)  At sentencing, the trial court struck all but two of the prior
9  conviction allegations under Section 667.5(b) and imposed one-year sentencing enhancements as
10 to each of the two remaining allegations.  (Lodgment 16 at 31.)

11 　　　In Apprendi, the United States Supreme Court held that "*[o]ther than the fact of a prior*
12 *conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory
13 maximum must be submitted to a jury, and proved beyond a reasonable doubt."[54]  Because the
14 sentencing enhancements Petitioner complains of are based on his admission that he had prior
15 convictions, the trial court did not violate Apprendi by imposing sentences under California
16 Penal Code section 667.5(b).

17 　　　Accordingly, this Court finds that the California courts' denial of Petitioner's Apprendi
18 claim was neither contrary to, nor involved an unreasonable application of, clearly established
19 federal law, as determined by the United States Supreme Court.  Claim Five does not support
20 habeas relief.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

---

[53] 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).
[54] Id. at 490 (emphasis added).

# VII.

# **RECOMMENDATION**

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Final Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: June 08, 2015

_____
HONORABLE LOUISE A. LAMOTHE
United States Magistrate Judge